# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARIAN BRIDGES, AS THE NATURAL
AND BIOLOGICAL MOTHER, NEXT OF
KIN, AND PERSONAL
REPRESENTATIVE OF THE ESTATE OF
ROBERT LEE CLARK, JR.,**

**Plaintiff,**

**-vs-**                                   **Case No.  6:07-cv-1010-Orl-28DAB**

**SEMINOLE COUNTY, DONALD
ESLINGER, WILLIAM MORRIS,**

**Defendants.**
_____

# ORDER

Plaintiff initiated this lawsuit by filing a four-count complaint against Seminole County,

Sheriff Donald Eslinger in his official capacity, and Deputy Sheriff William Morris in his

individual capacity.  (Doc. 1).  Plaintiff alleges that her son, Robert Lee Clark, was killed

when Deputy Morris, while pursuing the SUV in which Clark was a passenger, rammed or

swiped the SUV; Clark was ejected from the SUV and was instantaneously killed.  (See id.

¶¶ 9 & 11).  Currently before the Court are the motions to dismiss (Docs. 13, 14, & 29) filed

by the Defendants.

## I.  Count I – 42 U.S.C. § 1983 Against Deputy Morris Only

In Count I, Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 against Deputy Morris

in his individual capacity.  Plaintiff alleges that Deputy Morris's actions constituted an

unreasonable seizure in violation of the Fourth Amendment.  Deputy Morris seeks dismissal

of this, the lone count against him, on the basis that the Complaint fails to state a cause of

action for a violation of the Fourth Amendment.

In his motion to dismiss (Doc. 14), Deputy Morris relies solely on the Supreme Court's

decision in Scott v. Harris, 127 S. Ct. 1769 (2007).  Scott involved facts similar to those

alleged by Plaintiff in the instant case, and the Supreme Court held that the deputy involved

there was entitled to summary judgment on the grounds of qualified immunity because his

actions in hitting the pursued vehicle from the rear were reasonable.

However, as correctly noted by Plaintiff in her response memorandum (Doc. 19), the

different posture of the Scott case – a summary judgment with a developed factual record,

including a videotape of the car chase at issue – renders it insufficient as a basis for

dismissal of this count at the pleading stage.  The Supreme Court's inquiry in Scott was fact-

focused, and the Court determined that the deputy's actions were reasonable under the

particular circumstances depicted on the videotape – not, however, as a bright-line rule to

be applied in all law enforcement vehicle pursuit cases.  See 127 S. Ct. at 1777-78

("Although respondent's attempt to craft an easy-to-apply legal test in the Fourth Amendment

context is admirable, in the end we must still slosh our way through the fact-bound morass

of 'reasonableness.'"); cf. Beshers v. Harrison, 495 F.3d 1260, 1268 (11th Cir. 2007)

(applying Scott and affirming summary judgment for law enforcement defendants in vehicle

pursuit case, noting that "to determine whether deadly force was reasonable we must

determine whether [the officer's] actions were objectively reasonable in light of the facts and

circumstances of the pursuit"); Steele v. McMahon, No. CIV S-05-1874 DAD P, 2007 WL

2758026, at *10 n.11 (E.D. Cal. Sept. 21, 2007) (denying summary judgment on issue of qualified immunity, noting that <u>Scott</u> was not helpful to the resolution of the motion because "in <u>Scott</u> the Supreme Court found that because the record included a videotape of the entire high-speed chase at issue, there could be no dispute of material fact," whereas "[n]o such indisputable evidence [was] contained in the record before [the <u>Steele</u>] court"). Accepting as true the facts alleged in the Complaint, a determination of whether Deputy Morris's actions were objectively reasonable cannot be made at this point. Cf. <u>Long v. Slaton</u>, 508 F.3d 576, 580 (11th Cir. 2007) (reversing denial of motion to dismiss on qualified immunity grounds where force used by deputy was objectively reasonable even on the facts as alleged by the plaintiff in the complaint). Deputy Morris's motion (Doc. 14) shall be denied.[1]

### II.  Count II – 42 U.S.C. § 1983 Against Sheriff Eslinger and Seminole County

In Count II, Plaintiff brings a claim pursuant to 42 U.S.C. § 1983 against Sheriff Eslinger in his official capacity and against Seminole County. Plaintiff alleges that these two Defendants "had a policy, practice, and[/]or custom of failing to properly hire, train, and[/]or supervise its [sic] road patrol deputies" with regard to use and authorization of the PIT maneuver and "the circumstances under which deadly force should or should not be used." (Compl. ¶ 15).

Sheriff Eslinger asserts that Plaintiff has not sufficiently pled this claim, relying in part on the <u>Scott</u> decision cited by Deputy Morris and in part arguing that a policy causing the alleged violation has not been adequately alleged. Seminole County urges dismissal of this

---

[1]Of course, this ruling does not preclude reraising of this issue later in the case.

count against it on the basis that it "cannot be held liable for the actions of the Sheriff or his deputies" because the Sheriff is not an agent of the County and "has absolute control over his deputies." (Doc. 26 at 1).  Seminole County further argues that "Plaintiff has failed to establish any . . . policies or procedures created by Seminole County." (Id. at 2).

A policy or custom of a municipality is not subject to a "heightened pleading standard." See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  Moreover, as noted in the discussion of Count I, the Scott case does not provide a basis for dismissal at this stage.  However, due to lack of clarity and the possibility of redundancy, Count II must be repled.

Plaintiff brings Count II against Sheriff Eslinger in his official capacity as well as against Seminole County.  "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Ky. v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. at 166.

Plaintiff alleges, in collective terms, that these two Defendants "had a policy, practice, or custom" that led to the alleged constitutional deprivation that occurred here.  It appears that Plaintiff is alleging the existence of only one policy, practice, or custom.  Plaintiff does not state whether she is alleging that Sheriff Eslinger is the final policymaker for the County or whether there is some policymaker other than the Sheriff acting on the County's behalf with regard to pursuit policies.  It is unlikely that Plaintiff is alleging the latter, but clarification

-4-

is required.  If Plaintiff is alleging that the Sheriff is the policymaker and the County is the entity of which the Sheriff is an agent, then assertion of the claim against both the Sheriff in his official capacity and the County is duplicative.  If Plaintiff is truly alleging a policy by the County apart from whatever policy is set by the Sheriff – and thus a claim against two defendants in Count II – this count should so state.  The Sheriff and the County are represented by separate counsel in this suit; if Plaintiff's claim is duplicative, resources are being wasted in the defense of this case.  Accordingly, the motions to dismiss Count II shall be granted without prejudice, and Plaintiff will be permitted to replead Count II to clarify this claim.[2]

III.  Counts III and IV – Sections 30.07 and 768.28, Florida Statutes

---

[2]The Court makes no finding or ruling here regarding what entity the Sheriff represents.  The Eleventh Circuit has noted that its "decisions have not been entirely consistent on whether the relevant entity in an official-capacity suit against a sheriff in Florida is the County or the Sheriff's Department (as a unit operating autonomously from the County)." Brown v. Neumann, 188 F.3d 1289, 1290 n.2 (11th Cir. 1999). More recent cases within this circuit suggest that the County is the relevant entity. See Adcock v. Baca, 157 Fed. Appx. 118, 119 (11th Cir. 2005) ("When, as here, the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents – in this case, Polk County."); Taylor v. Dean, No. 5:05-cv-397-Oc-10GRJ, 2006 WL 4756452, at *3 (M.D. Fla. Oct. 25, 2006) (Hodges, J.) ("While the Marion County Sheriff's Office is not an entity that can be sued under Florida law, court[]s have treated a suit against the sheriff, in his official capacity, as a suit against the county itself.  Count X already states a § 1983 claim against Dean, in his official capacity as the Marion County Sheriff, and the Court interprets that claim as actually being a claim against Marion County.") (footnote omitted).  But see Gray v. Kohl, No. 07-10024-CIV, 2007 WL 3520119, at *7 (S.D. Fla. Nov. 14, 2007) ("Because both Roth, the Monroe County Sheriff, and Perez, a Sheriff's Officer, are both sued in their official capacity as agents of the Monroe County Sheriff's Office, suit against either is the equivalent of a suit directly against the Monroe County Sheriff's Office.").  Again, the immediate problem in the instant case is the potentially duplicative nature of the claim against both Sheriff Eslinger in his official capacity and the County, with different counsel representing each.

In Count III, Plaintiff brings a claim solely against Sheriff Eslinger under section 30.07, Florida Statutes, which provides that "[s]heriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, and for the neglect and default of whom in the execution of their office the sheriff shall be responsible."  In Count IV, Plaintiff brings a claim against both Sheriff Eslinger and Seminole County under section 768.28, Florida Statutes.  This section waives sovereign immunity for the state and its subdivisions in suits "for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision."  § 768.28(1), Fla. Stat.  Plaintiff alleges that under this section, Sheriff Eslinger and the County are vicariously liable for Deputy Morris's alleged negligence and lack of due care in swiping the vehicle in which Clark was a passenger.

Sheriff Eslinger contends that Count III is not viable and must be dismissed because section 768.28 – the section upon which Count IV is based – provides the exclusive remedy against him.  Both Seminole County and Sheriff Eslinger have moved to dismiss Count IV. These counts are addressed in reverse order.

Sheriff Eslinger seeks dismissal of Count IV on the basis that no duty was owed to Clark and therefore there cannot be an actionable negligence claim.[3]  This argument is well-taken. As noted by Sheriff Eslinger, Florida's Third District Court of Appeal – the only Florida

---

[3]Sheriff Eslinger also contends that Plaintiff failed to give the required notice under section 768.28.  (See Doc. 13 at 6-7).  Although the Court need not reach this question, Plaintiff does allege in the Complaint that "[a]ll conditions precedent to the maintenance of common law tort actions against the Defendants have been fulfilled pursuant to § 768.28, Florida Statutes." (Compl. ¶ 3). Moreover, Plaintiff has served the Department of Insurance as required by section 768.28(7).  (See Return of Service, Doc. 20).

appellate court to have addressed the issue[4] – has held that a law enforcement officer does not owe a duty to a passenger in a pursued vehicle.  Fisher v. Miami-Dade County, 883 So. 2d 335 (Fla. 3d DCA 2004).  Although Plaintiff contends that Clark was an "innocent passenger" in the vehicle, the Fisher court made no exception for "innocent" passengers, though courts in other states have done so.  See id. at 337 (citing cases).

Plaintiff argues that Fisher does not support dismissal of this count at this stage of the case because Fisher involved review of a summary judgment rather than a motion to dismiss.  However, the Third District Court of Appeal held as a matter of law that no duty is owed, and this is not a fact-dependent inquiry.  In order for Plaintiff to have an actionable negligence claim, "there must be a common law or statutory duty regarding the alleged negligent conduct."  Moore v. Dep't of Corr., 833 So. 2d 822, 824 (Fla. 4th DCA 2002); see also Pollock v. Fla. Dep't of Highway Patrol, 882 So. 2d 928, 932 (Fla. 2004) ("If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability . . . .").  In light of the Fisher court's controlling holding of a lack of duty, there can be no actionable negligence by Deputy Morris and no vicarious liability for Sheriff Eslinger or for Seminole County.[5]  Count IV must be dismissed as against both of these Defendants.

_____

[4]See Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000) ("Absent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law. . . . [T]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme Court].  Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts." (citations and internal quotations omitted).

[5]In its motion, Seminole County makes different arguments for dismissal of Count IV. (See Doc. 26).  However, the basis raised by Sheriff Eslinger and addressed in the text is

Count III is brought only against Sheriff Eslinger, who, as noted earlier, contends that this claim under section 30.07 is not viable because section 768.28 now supplies the exclusive remedy against a sheriff for the actions of his deputies.  In support of this argument, Sheriff Eslinger relies on Beard v. Hambrick, 396 So. 2d 708 (Fla. 1981).  In that case, the Supreme Court of Florida noted that prior to the amendment of section 768.28 in 1980, section 768.28 provided "an alternative remedy" against sheriffs and did not "repeal section 30.07 by implication"; the court further stated that "[s]ection 30.07 and the long-established case law setting forth the conduct for which a sheriff is derivatively responsible under the provisions of section 30.07 are not affected by section 768.28."  Id. at 712.  However, in the portion of the opinion on which Sheriff Eslinger relies, the Beard court noted that its opinion was "expressly limited to the application of sections 30.07 and 768.28 as they existed at the time the [cause of action at issue] arose" and that the 1980 amendment "appears to make several changes in the operative law, including making section 768.28 the exclusive remedy."  Id.

Plaintiff responds that "Sheriff Eslinger can point to no Florida Supreme Court case and or any lower Florida court case addressing the issue since the Beard v. Hambrick decision."  (Doc. 21 at 2).  Plaintiff proposes that "[t]his court should therefore certify the question and refer the matter to the Florida Supreme Court for determination prior to ruling on the Defendant's request for dismissal on the aforementioned grounds."  (Id.)

Plaintiff's suggestion that this Court certify the question to the Florida Supreme Court,

_____

dispositive of this count as to both Defendants, and thus the County's arguments need not be discussed.

though certainly well-intentioned, is not well-taken.  "A [federal] district court lacks the authority to certify questions to the Florida Supreme Court."  Liberty Mut. Ins. Co. v. Elec. Sys., Inc., 813 F. Supp. 802, 805 (S.D. Fla. 1993).  Such certifications may be made by a federal *appellate* court but not by this Court.  See Fla. Const. art. V, § 3(b)(6) (providing that the Supreme Court of Florida "[m]ay review a question of law certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida"); Fla. R. App. P. 9.150(a) ("On either its own motion or that of a party, the Supreme Court of the United States or a United States court of appeals may certify a question of law to the Supreme Court of Florida if the answer is determinative of the cause and there is no controlling precedent of the Supreme Court of Florida.").

In any event, the question of whether section 768.28 provides the exclusive remedy after the 1980 amendment to section 30.07 is not "determinative of the cause."  Assuming arguendo the continued vitality of section 30.07, the claim under this section fails as a matter of law.

In this count, Plaintiff alleges that Sheriff Eslinger is liable for Deputy Morris's "neglect," and Plaintiff also describes Deputy Morris's conduct as "failing to use due care" and "negligent."  (Compl. ¶ 18).  Thus, although Plaintiff at first couches the conduct as "neglect" – the term used in section 30.07 – she then describes it as negligence.  To the extent that Plaintiff alleges negligence as the underlying basis for this claim, Count III fails for the same reason as does Count IV, discussed above – under Florida law as determined in Fisher, no duty is owed by a law enforcement officer to a passenger in a fleeing vehicle,

and absent a duty there can be no negligence claim.

Moreover, insofar as Plaintiff attempts to base this claim on something other than negligence, the claim also fails. Section 30.07 renders a sheriff liable for his deputies' "neglect and default . . . in the execution of their office." In 1935, the Supreme Court of Florida explained the terms "neglect" and "default" as used in this section: "'Default' has reference to nonperformance of a duty whether arising under contract or otherwise, while 'neglect' means to omit to do or perform an act enjoined on one. It does not generally imply carelessness or imprudence, but simply an omission to do or perform some work, duty, or act." Swenson v. Cahoon, 152 So. 203, 203 (Fla. 1933), aff'd on reh'g (1934).

To the extent "neglect" is different from "negligence,"[6] Plaintiff does not state a claim

---

[6]The Florida Supreme Court has, on at least one occasion, used "neglect" and "negligence" interchangeably when discussing section 30.07. See Holland v. Mayes, 19 So. 2d 709, 710 (Fla. 1944) (noting that "[s]ection 30.07, Florida Statutes . . . , authorizes the Sheriff to appoint deputies, clothes them with the same power as the Sheriff and makes the Sheriff responsible for their *negligent* acts" and concluding that "the Sheriff and his deputies are bound by the same rule of *negligence* that a civilian is bound under like circumstances") (emphasis added).

Black's Law Dictionary defines "neglect" as: "1. The omission of proper attention to a person or thing, whether inadvertent, negligent, or willful; the act or condition of disregarding. 2. The failure to give proper attention, supervision, or necessities, esp. to a child, to such an extent that harm results or is likely to result." Id. 1061 (8th ed. 2004). "'Neglect' is not the same thing as 'negligence.' In the present connection the word 'neglect' indicates, as a purely objective fact, that a person has not done that which it was his duty to do; it does not indicate the reason for this failure. 'Negligence, on the other hand, is a subjective state of mind, and it indicates a particular reason why the man has failed to do his duty, namely because he has not kept the performance of the duty in his mind as he ought to have done. A man can 'neglect' his duty either intentionally or negligently." Id. (emphasis removed) (quoting J.W. Cecil Turner, Kenny's Outlines of Criminal Law 108 n.1 (16th ed. 1952)) .

Black's defines "negligence" as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm,

for "neglect" as that term has been defined by the Florida Supreme Court in the context of section 30.07.  Plaintiff does not allege an "omi[ssion] to do or perform an act enjoined on one" as set forth in <u>Swenson</u>.  And, "default" was defined in <u>Swenson</u> as nonperformance of a duty; again, under <u>Fisher</u>, there is no duty, and thus there can be no "default."  Thus, regardless of whether section 30.07 survives the 1980 amendment to section 768.28 as a means for holding sheriffs responsible for acts of their deputies, Plaintiff's section 30.07 claim fails.  Count III must be dismissed.

### IV.  Claims for Punitive Damages and Attorney's Fees

In its motion to dismiss (Doc. 26), the County avers that "[t]he Complaint alleges a punitive damages claim against" the County.  (Doc. 26 ¶ 23).  The County is correct that punitive damages are not recoverable against municipalities in § 1983 actions.  <u>See, e.g.</u>, <u>Ky. v. Graham</u>, 473 U.S. 159, 167 n.13 (1985).  However, it appears that any references in the Complaint to punitive damages with regard to the County may have been inadvertent; Plaintiff lists punitive damages among the "injuries" in all counts of the Complaint (<u>see</u> Doc. 1 ¶¶ 13, 16, 19, & 22), but the Complaint only "demands" punitive damages in Count I (<u>see</u> <u>id.</u> at 5) – which is against Deputy Morris in his individual capacity[7] – and noticeably omits it from the judgment demands in the other three counts (<u>see</u> <u>id.</u> at 6, 7, & 8).  Nevertheless,

_____

except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights."  <u>Id.</u>

[7]In his motion to dismiss (Doc. 14), Deputy Morris did not seek to strike the punitive damages claim against him.  Punitive damages "are available in a suit against an official personally."  <u>Ky. v. Graham</u>, 473 U.S. 159, 167 n.13 (1985).

the references to punitive damages against the County and against Sheriff Eslinger in his official capacity shall be stricken.

The County also seeks to strike Plaintiff's claim for attorney's fees, asserting that "[t]here are no provisions allowing for recovery of attorney's fees under § 1983." (Doc. 26 at 8). The County is mistaken. As specifically noted by the Plaintiff in the Complaint (see Doc. 1 at 6), these fees are sought pursuant to 42 U.S.C. § 1988, which provides that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). The County's motion to strike the Plaintiff's claim for attorney's fees thus will be denied.

V.  Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Deputy Morris's Motion to Dismiss Complaint (Doc. 14) is **DENIED**.

2.  Sheriff Eslinger's Motion to Dismiss Complaint (Doc. 13) is **GRANTED with prejudice in part** and **GRANTED without prejudice in part**.  The motion is **GRANTED with prejudice** insofar as it pertains to Counts III and IV, and the motion is **GRANTED without prejudice** insofar as it pertains to Count II.

3.  Seminole County's Supplemental Motion to Dismiss Complaint (Doc. 26) is **GRANTED with prejudice in part**, **GRANTED without prejudice in part**, and **DENIED in part**.  The motion is **GRANTED with prejudice** insofar as it pertains to Count IV and to the references to punitive damages against Seminole County; the motion is **GRANTED without**

**prejudice** insofar as it pertains to Count II; and the motion is **DENIED** insofar as it seeks to strike Plaintiff's claim for attorney's fees.

    4.  Counts III and IV of the Complaint (Doc. 1) are **DISMISSED with prejudice**.

    5.  The references in the Complaint (Doc. 1) to punitive damages against Sheriff Eslinger in his official capacity and against Seminole County are hereby **STRICKEN**.

    6.  Count II of the Complaint (Doc. 1) is **DISMISSED without prejudice**.  Plaintiff may file an amended complaint reiterating Count I and realleging Count II **on or before Friday, March 14, 2008**.  **Failure to file an amended complaint on or before that date will result in dismissal, without further notice, of Count II with prejudice**.

    **DONE** and **ORDERED** in Orlando, Florida this 5th day of March, 2008.


JOHN ANTOON II
United States District Judge


Copies furnished to:
Counsel of Record
Unrepresented Party